IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2014

**FRAZIER PERRY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. 11-CR-462    Russell Lee Moore, Jr., Judge**

**No. W2014-00690-CCA-R3-PC  - Filed January 15, 2015**

The Petitioner, Frazier Perry, appeals as of right from the Dyer County Circuit Court's dismissal of his petition for post-conviction relief. The Petitioner contends that his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of his trial counsel. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Milly Worley, Dyersburg, Tennessee, for the appellant, Frazier Perry.

Herbert H. Slatery, III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Petitioner was indicted in December 2011, on two counts of selling 0.5 grams or more of cocaine within 1,000 feet of a school. See Tenn. Code Ann. §§ 39-17-417, -432. The State filed a written notice of its intent to have the Petitioner sentenced as a habitual drug offender. See Tenn. Code Ann. § 39-17-417(l). As explained at the plea submission hearing, the Petitioner, if sentenced as a habitual drug offender, faced Range III sentences of between twenty and thirty years which would be served at 100 percent because both offenses occurred within 1,000 feet of a school. See Tenn. Code Ann. §§ 39-17-417(l)(3), -432(c).

Shortly before the scheduled trial date, the Petitioner accepted a plea agreement from the State. The Petitioner agreed to plead guilty to both counts in exchange for concurrent sentences of twelve years. The State also agreed not to pursue the drug-free school zone violations; therefore, the Petitioner's sentence would be served at thirty-five percent rather than 100 percent. The factual basis for the plea agreement was that in July 2011, the Dyersburg Police Department conducted two "controlled buys" using the same confidential informant. On each occasion, the informant gave the Petitioner fifty dollars in exchange for more than 0.5 grams of cocaine. The exchanges were recorded and videotaped.

At the plea submission hearing, the Petitioner stated under oath that the factual basis provided by the State was correct. The trial court reviewed the details of the plea agreement with the Petitioner, and the Petitioner stated that he understood the agreement and was voluntarily pleading guilty to the charges. The Petitioner also stated that trial counsel had done everything he had asked him to do and answered "all the questions" he had about the charges and the plea agreement. The Petitioner stated that he was satisfied with trial counsel's representation of him.

The judgments against the Petitioner were entered on July 9, 2012. On May 23, 2013, the Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed, and an amended petition was filed. The petitions contended that the Petitioner's guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of trial counsel. The petitions alleged that trial counsel had failed to advise the Petitioner of the elements of the offenses and possible sentences, failed to properly investigate the case and interview potential witnesses, failed to investigate the confidential informant used by the police, and failed to review the video surveillance of the drug buys.

Trial counsel testified that he met with the Petitioner on a number of occasions to discuss the case and that he also met with the Petitioner's wife "on numerous occasions." Trial counsel further testified that he reviewed with the Petitioner the charges and the possible sentences. Trial counsel also reviewed the video surveillance of the drug buys with the Petitioner and his wife. Trial counsel recalled the Petitioner's wife viewed the videos and "that she identified [the Petitioner] and . . . [told trial counsel] how clear it was to her." Trial counsel further testified that he could not recall any "problem with the continuity of the video." Trial counsel testified that he also reviewed with the Petitioner the police reports, information regarding the confidential informant used in the controlled buys, and maps showing that each exchange occurred within 1,000 feet of a school.

Trial counsel testified that the State's initial plea offer was for concurrent twelve-year sentences on both counts to be served at 100 percent, which the Petitioner rejected. According to trial counsel, when the State filed its notice to have the Petitioner sentenced as

a habitual drug offender, he spoke with the Petitioner and explained the possible sentence ranges and that they would have to be served at 100 percent. Trial counsel testified that the Petitioner said that he could not "risk twenty years at [100] percent." According to trial counsel, he then negotiated directly with the District Attorney, circumventing the assistant district attorney assigned to the case, to secure the plea agreement that the Petitioner ultimately accepted. Trial counsel recalled that the Petitioner "was quite happy" with the plea agreement he secured.

The Petitioner testified that he met with trial counsel a total of five times, often shortly before court proceedings, and that trial counsel frequently "would tell [the Petitioner] that he was coming down [to the jail], but would never show up." The Petitioner claimed that trial counsel repeatedly told him "to go to trial because there was nothing that [he] had to worry about" and that the police often used confidential informants "to try to set people up." The Petitioner testified that he was adamant that he wanted to take his case to trial. The Petitioner claimed that trial counsel agreed with him until they met "a couple of days" before the trial was scheduled to start, and trial counsel showed the Petitioner information "regarding the additional sentencing or the enhanced sentencing." The Petitioner testified that trial counsel then told him that "they got you dead to the right" and that the trial judge had "been on" trial counsel "about getting this case over with."

The Petitioner testified that he still wanted to go trial but that his last meeting with trial counsel made him feel that he "wouldn't be able to trust [trial counsel] in trial." The Petitioner claimed that he felt trial counsel was unprepared for trial and testified that he wanted trial counsel to interview his mother as a potential witness to establish that the site of one of the drug buys was not within 1,000 feet of a school. However, the Petitioner admitted that trial counsel showed him maps that established that each buy occurred within 1,000 feet of a school. The Petitioner also admitted that trial counsel shared information about the confidential informant's "background" and prior convictions with him. The Petitioner claimed that there were "breaks" in the video surveillance and that the videos appeared to have been edited.

The Petitioner admitted that he could be "seen clearly" in the surveillance videos. The Petitioner also admitted that he told the trial court during the plea submission hearing that he was satisfied with trial counsel's representation. The Petitioner claimed that he "really didn't understand at the time" what his plea agreement was and that he did not say anything to the trial court about wanting to go to trial because he "was nervous." However, the Petitioner admitted that he had been through the plea submission process before, having pled guilty to felony offenses on four other occasions.

The post-conviction court accredited trial counsel's testimony over the Petitioner's testimony and dismissed the petition. The post-conviction court stated that there was no evidence that trial counsel failed to meet with the Petitioner or was unprepared to go to trial. The post-conviction court further noted that there was no evidence, apart from the Petitioner's testimony, that "there were some breaks in the [surveillance] video." The post-conviction court concluded that the Petitioner's "exposure was so high if [he] were convicted, that [he] did not want to take that chance" and that he did not want to go to trial as he alleged in his post-conviction petition.

## ANALYSIS

The Petitioner contends that the post-conviction court erred by dismissing his petition for post-conviction relief. The Petitioner argues that his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of trial counsel. The Petitioner alleges that he only accepted the plea agreement because trial counsel "was not prepared for trial and [the Petitioner] became scared." The State responds that the Petitioner has failed to establish that trial counsel was ineffective or that he would not have accepted the plea agreement but for trial counsel alleged ineffective assistance.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn.

1989). In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner's arguments on appeal are based solely upon his testimony at the post-conviction hearing. However, the post-conviction court accredited the testimony of trial counsel over the Petitioner's testimony. Trial counsel testified that he met with the Petitioner and his wife on several occasions. According to trial counsel, he reviewed the charges and possible sentences with the Petitioner, as well as the police reports, information regarding the confidential informant, maps showing the locations of the drug buys, and videos of the drug buys. Trial counsel further testified that the Petitioner's wife thought it was clearly the Petitioner in the videos.

Trial counsel testified that the Petitioner rejected an initial offer from the State of concurrent twelve-year sentences to be served at 100 percent. However, once the State filed notice of its intent to have the Petitioner sentenced as a habitual drug offender, the Petitioner agreed to accept a plea agreement because he could not "risk twenty years at [100] percent." Trial counsel then circumvented the assistant district attorney assigned to the case and negotiated directly with the District Attorney to secure concurrent twelve-year sentences to be served at thirty-five percent. Trial counsel testified that the Petitioner "was quite happy" receiving a sentence well below the minimum sentence length and release eligibility percentage he would have received had he gone to trial and been convicted. Accordingly, we agree with the post-conviction court that there is no evidence that trial counsel's performance was deficient or that the Petitioner's guilty pleas were not entered into voluntarily and knowingly. As such, we affirm the post-conviction court's dismissal of the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE